# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 2:11-cv-14432-KMM

JOHN MANN, on behalf of himself
and others similarly situated,

       Plaintiff,

vs.

MICHAEL FALK and DEBRA FALK,
d/b/a ADELAIDE SHORES RV RESORT;
MICHAEL FALK, individually; and
DEBRA FALK, individually,

       Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment (ECF No. 22) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 55). The Parties filed Responses (ECF Nos. 25, 69), Replies (ECF No. 29, 74), and Plaintiff filed a Sur-Reply (ECF No. 34). UPON CONSIDERATION of the Motions, the Responses, the Replies, the Sur-Reply, the pertinent portions of the Record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND[1]

The instant action arises out of alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA").  Plaintiff John Mann worked as a laborer for Defendants from approximately May 2004 through November 2011.  Plaintiff performed jobs related to maintenance and landscaping at Adelaide Shores RV Resort ("Adelaide Shores").  Plaintiff worked as an independent contractor until he was classified as an employee in August 2009.[2]  It is undisputed that during some weeks Plaintiff worked in excess of forty hours per week at Adelaide Shores.  Defendants claim, however, that Adelaide Shores qualifies for an exemption to the FLSA so that Plaintiff is not entitled to overtime wages pursuant to 29 U.S.C. § 207(a)(1).[3]

Adelaide Shores is a recreational vehicle ("RV") park that caters to visitors from the northern states and Canada who travel to Florida for the winter months.  Additionally, Adelaide Shores has approximately 10% of its lots used by full-time residents who live there on a yearly basis.  Visitors to Adelaide Shores can participate in activities such as "tennis, aerobics, aquacise, dance lessons, painting lessons, wood carving, quilting, bridge and other card games."  Defs. Statement of Material Facts, ¶ 4 (ECF No. 22-2).  There are also golf professionals at Adelaide Shores who provide lessons and organize trips to local golf courses.  Many of the activities are organized by the Activities Committee, which is a group comprised of residents of

---

[1] The facts herein are taken from Plaintiff's Complaint (ECF No. 1); Defendants' Motion for Summary Judgment; Plaintiff's Response; Defendants' Reply; Plaintiff's Sur-Reply; Plaintiff's Motion for Partial Summary Judgment; Defendants' Response; and Plaintiff's Reply.

[2] Plaintiff claims that he was an employee throughout the entirety of his working relationship at Adelaide Shores, but was improperly classified as an independent contractor.  Plaintiff alleges that his duties before August 2009 and after August 2009 were exactly the same.  As discussed, *infra*, Defendants do not dispute this allegation but claim that Plaintiff was classified as an independent contractor at Plaintiff's request. Defs. Resp., at 2.

[3] Subject to exceptions, 29 U.S.C. § 207(a)(1) provides in part that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Adelaide Shores.   Defendants derive no income from the activities performed at Adelaide Shores.  In fact, Defendants derive 92% of their income from the rental of lots and 8% from the sale of RVs.  During Plaintiff's employment, Adelaide Shores had an Activities Director from November 2010 to March 2011 who was compensated by receiving a free lot at the resort.

On November 17, 2011, Defendants terminated Plaintiff's employment at Adelaide Shores.  Plaintiff alleges that he was terminated because of his complaints regarding Defendants' illegal pay methods.   More specifically, Plaintiff alleges that in August 2011 he verbally complained to Celia Falk-Lare, the payroll manager, about Defendants' failure to pay him overtime wages.  Also, Plaintiff claims that he reiterated his complaint to Michael Falk on November 17, 2011 immediately before he was fired.

On December 19, 2011, Plaintiff filed the Complaint against Defendants.   In the Complaint, Plaintiff asserts claims for retaliation in violation of 29 U.S.C. § 215(a)(3) (Count I); failure to compensate for employment in excess of forty hours per week in violation of 29 U.S.C. § 207(a)(1) (Count II);  and unjust enrichment (Count III).[4]

## II. LEGAL STANDARD

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994).   The moving party has the burden of meeting this exacting standard.   Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Moreover, "A party must support its assertion that there is no genuine issue of material fact by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations  .  .  . , admissions, interrogatory answers, or other materials.'" Ritchey v. S. Nuclear Operating Co., No. 10-11962,

---

[4] The Parties filed a Joint Stipulation of Dismissal (ECF No. 24) as to Count IV of Plaintiff's Complaint, which asserted a claim for declaratory relief pursuant to 28 U.S.C. § 2201.

2011 WL 1490358, at *1 (11th Cir. Apr. 20, 2011) (quoting Fed. R. Civ. P. 56(c)(1)).  An issue

of fact is "material" if it is a legal element of the claim under the applicable substantive law

which might affect the outcome of the case.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th

Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier

of fact to find for the nonmoving party.  Id.

In applying this standard, the district court must view the evidence and all factual

inferences therefrom in the light most favorable to the party opposing the motion.  Id.  "The mere

existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient;

there must be evidence on which the jury could reasonably find for the [nonmovant]."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**III. ANALYSIS**

The Parties have both moved for summary judgment on various claims.  Defendants'

Motion alleges that summary judgment should be granted in favor of Defendants on (1) the

retaliation claim in Count I because Plaintiff did not have a good faith, subjective belief which is

objectively reasonable that Defendants were violating the law; (2) the overtime wage violation in

Count II because Defendants qualify for the recreational and amusement establishment

exemption; and (3) the unjust enrichment claim in Count III because it is preempted by federal

law.  Plaintiff's Motion alleges that summary judgment should be granted in favor of Plaintiff on

the issue that (1) Michael and Debra Falk d/b/a Adelaide Shores, and Michael Falk, individually,

are employers covered by the FLSA;[5] (2) Adelaide Shores does not qualify for the recreation and

---

[5] Defendants do not dispute this issue.  Defendants admit that Defendant Adelaide Shores was the employer of Plaintiff but that Adelaide Shores is a fictitious entity and that Michael Falk and Debra Falk are doing business as Adelaide Shores.  Defs. Resp., at 3.  The Parties agree that Michael Falk qualifies as an individual employer under the FLSA. Defs. Resp., at 3.  Since there is no dispute, this Court declines to further address this issue.  The Parties, however, dispute whether Debra Falk qualifies as an employer under the FLSA.  Defs. Resp., at 3; Pl. Reply, at 2.

amusement exemption to the FLSA; (3) Plaintiff was an employee and not an independent contractor during the relevant period;[6] and (4) Plaintiff is entitled to liquidated damages because Defendants have not presented any evidence regarding what actions they undertook in order to determine their obligations under the FLSA.[7] This Court addresses each of these arguments in turn.

### A. Amusement and Recreational Exemption

Count II of the Complaint alleges that Defendants failed to compensate Plaintiff for employment in excess of forty hours per week in violation of 29 U.S.C. § 207(a)(1). Defendants argue that summary judgment should be granted in their favor because Adelaide Shores qualifies for an exemption from the FLSA under 29 U.S.C. § 213(a) for amusement and recreational establishments. Defs. Mot. for Summ. J., at 4–5.

In 1938, Congress enacted the FLSA "in order to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" West v. City of Ft. Pierce, No. 07-CV-14335, 2008 WL 3270849, at *2 (S.D. Fla. Aug. 8, 2008) (quoting Antenor v. D & S Farms, 88 F.3d 925, 929 (11th Cir. 1996); 29 U.S.C. §§ 202(a) & (b)). "To those ends, 29 U.S.C. § 207 requires that

---

[6] Defendants state that "Defendants agree that if the recreational seasonal exemption does not apply then Plaintiff is owed half-time for all hours worked over forty during the statute of limitations period that the Court determines is applicable." Defs. Resp., at 4. Defendants fail to further address this argument in their Response. Thus, this Court is left to assume that Defendants also concede this issue.

[7] Defendants also failed to address this argument in their Response. Pursuant to Rule 56(e), the Court is permitted to consider facts cited with support by a movant but left uncontroverted by the nonmovant as undisputed for purposes of ruling on a summary judgment motion. See Fed. R. Civ. P. 56(e); see also Head v. Cornerstone Residential Mgmt., Inc., No. 05-CV-80280, 2010 WL 3781288, at *2 n.2 (S.D. Fla. Sept. 22, 2010) (finding that under Local Rule 7.5(d), "[u]nless a particular undisputed fact from [movant's] statement is directly addressed by [nonmovants], the [movants'] statements which are supported by evidence in the record, are deemed admitted."). Therefore, this Court declines to further address this issue and finds in favor of Plaintiff since Defendants failed to dispute Plaintiff's supported allegation. See Pl. Mot. for Summ. J., at 17–19.

employers pay time and a half for those hours that an employee works in excess of the standard forty hour work week." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1156 (11th Cir. 2008) (citing 29 U.S.C. § 207(a)(1)).  Section 213, however, lists a host of exemptions to the FLSA's minimum wage and maximum hour requirements.  See 29 U.S.C. § 213.  An employer bears the burden of proving that it qualifies for an exemption under the FLSA. Feagley v. Tampa Bay Downs, Inc., No. 11-CV-564EAKMAP, 2012 WL 2178857, at *4 (S.D. Fla. June 13, 2012) (citing Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir. 1995)).  Moreover, "[e]xemptions under the FLSA are to be construed narrowly against the employer who asserts them."  Id. The recreational and amusement exemption provides that:

> The provisions of . . . section 207 of this title shall not apply with respect to . . . any employee employed by an establishment which is an amusement or recreational establishment . . . if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year . . . .

29 U.S.C. §§ 213(a), (a)(3).  Thus, under this provision "an employer qualifies for exemption if it is a recreational and amusement establishment and it also satisfies either the seasonal operation test or the six-month receipts test."  Alvarez Perez, 515 F.3d at 1156 (emphasis added).

Under section 213(a)(3), this Court must first determine if Adelaide Shores is an amusement or recreational establishment.  "Amusements or recreational establishments are 'establishments frequented by the public for its amusement or recreation.'" Jeffrey, 64 F.3d at 595 (quoting Brock v. Louvers & Dampers, Inc., 817 F.2d 1255, 1257 (6th Cir. 1987); 29 C.F.R. § 779.385).  Although the FLSA does not define these types of establishments, the Department of Labor regulations define "amusement or recreational establishments" as "establishments frequented by the public for its amusement or recreation . . . . Typical examples of such are the concessionaires at amusement parks and beaches."  29 C.F.R. § 779.385 (citing S. Rept. 145,

87th Cong., first session, p. 28; H. Rept. 75, 87th Cong., 1st Sess., p. 10).  Additionally, rather than focusing on the nature of the work, the applicable federal regulations state that the exemption "depend[s] on the character of the establishment."  29 C.F.R. § 779.302.  An employer's "principal activity should be determinative of the [employer's] eligibility for an exemption."  Brennan v. Texas City Dike & Marina, Inc., 492 F.2d 1115, 1119 (5th Cir. 1974).[8]

Courts have consistently applied the exemption to cover "'such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sports events, parimutel racing, sport boating or fishing or other similar or related activities.'"  Brock, 817 F.2d at 1258 (quoting H. R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965)).  This exemption is needed because the type of employment covered "may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards."  Id. at 1259.

Here, this Court finds that Adelaide Shores is not an amusement or recreational establishment.  In reaching this conclusion, this Court notes that Adelaide Shores' principal activity is renting lots for RVs.  Defendants attempt to avoid this finding by claiming that Adelaide Shores "is different from a RV park that only rents a place to park an RV.  Adelaide [Shores] is a recreational destination."  Def. Mot. for Summ. J., at 4.  All activities which Defendants claim make Adelaide Shores a recreational establishment, however, are run by the Activities Committee, which is comprised solely residents of Adelaide Shores.  Pl. Mot. for Summ. J., at 11–12.  Defendants do not collect money for any of the activities, and any money collected by the Activities Committee is returned to it in order to fund future activities.  Pl. Resp., at 9; Defs. Resp., at 5–6.  Defendants' effort to fit within the exemption because they have an Activities Director on staff is without merit since Adelaide Shores did not have this position

---

[8] Fifth Circuit decisions prior to October 1, 1981, are binding precedent upon this Court.  See Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

during the majority of the time that Plaintiff worked at the establishment.  Additionally, the current Activities Director, who did not start until approximately two months after Plaintiff was fired, acknowledged his limited role in the activities that take place at Adelaide Shores.  See Dep. of D. Greenslade, at 36–40 (ECF No. 59-3) (listing the numerous activities that the residents themselves organize and run).   The current Activities Director even described his limited duties as helping schedule the use of certain facilities for activities between the various groups at Adelaide Shores and socializing with residents.  See Dep. of D. Greenslade, at 24–25, 40.  Defendants' bald allegation that Debra Falk "oversees" the Activities Committee is devoid of any support in the record.  Defs. Resp., at 8; see also Dep. of D. Greenslade, at 29 (stating that the Falks and the Activities Director attend meetings of the Activities Committee as observers and do not direct the meetings).   Thus, the activities are run primarily by the Activities Committee and Defendants cannot claim that these activities transform Adelaide Shores from an RV park into a recreational destination.

Additionally, Adelaide Shores does not derive any profit from the recreational activities that take place on its premises.  Indeed, 92% of its profits are derived from the rental of lots with the remaining 8% being derived from RV sales.  An establishment's sources of income has been held to be a persuasive factor in determining eligibility for the exemption.  Brennan, 492 F.2d at 1119 (stating that where an establishment is multifaceted, the principal activity—which determines its qualification for the amusement and recreational exemption—will be determined by analyzing the establishment's main source of income).  Defendants do not dispute that they do not derive income from any of the recreational activities that take place at Adelaide Shores.  Defs. Resp., at 5.  However, Defendants allege that "the recreational lifestyle of Adelaide Shores cannot be separated from the lot rental since it is the recreational nature of Adelaide [Shores]

establishment that causes seasonal residents from the north to come to Adelaide Shores in the winter and rent a lot for their [RV]." Defs. Resp., at 5. This Court rejects this contention because such a finding would establish a loophole from the FLSA for any resort in Florida with a pool or ping-pong table that caters to visitors attempting to escape the colder winter months. See Cao v. Double JJ Resort Ranch, 375 F.3d 393, 397 (6th Cir. 2004) (stating that "hotels, motels and eating places do not have an amusement or recreational character . . . . The fact that these stores are heavily patronized by tourists does not make them recreational or amusement establishments any more than restaurants, retail stores, and similar establishments at a seaside resort would be considered exempt"). It seems much more likely that residents travel to stay at Adelaide Shores in order to take advantage of nearby recreational facilities or attractions—such as golf courses, Disney World, Bush Gardens, and the Kennedy Space Center. See Aff. of John Molko, Sr., ¶ 15 (ECF No. 26-2). Despite Defendants' contentions, residents do not travel southbound to engage in a "recreational lifestyle" by playing shuffleboard and other activities at Adelaide Shores.

Additionally, 10% of the lots—which is approximately 50 lots—are occupied by residents who live at Adelaide Shores year-round. Pl. Resp., at 7; Defs. Resp., at 5. Thus, approximately 100 residents live full-time at Adelaide Shores and consider it to be their home— and not an amusement and recreational facility. See Aff. of Molko, ¶¶ 3–4, 11, 12 (stating that he has lived at Adelaide Shores on a yearly basis since 2006). Further undermining the recreational aspect of Adelaide Shores is the fact that Defendants impose a minimum stay of four months at the facility for seasonal residents. Defs. Reply, at 3–4.[9] Additionally, Defendants require that residents sign a "Residential Lease" which describes the parties' relationship as

---

[9] Defendants only shorten the stay requirement when there are vacant lots that will not be rented for the season. Defs. Reply, at 3–4.

landlord and tenant. Pl. Mot. for Summ. J., at 12.[10]  Indeed, Adelaide Shores is more akin to a

retirement community because it does not allow children and is reserved for residents that are

older than fifty-fives years old. See Dep. of M. Falk, at 17 (ECF No. 62-1).

Equally unavailing is Defendants' attempts to compare itself to an exempt campsite that

offers activities to visitors. Defs. Reply, at 4–5; Defs. Resp., at 6–7. This comparison is

inapplicable because camping itself is a recreational activity that is generally short-term, whereas

an RV park has residents who live there for months. See Dept. of Labor, Field Operations

Handbook § 25j15(b) ("An exempt campsite or campground operates and maintains its

establishment as a functional amusement or recreational unit, i.e., provides facilities for camping

as a recreational facility.") (emphasis added).[11]

Simply put, Adelaide Shores is "not the type of establishment that Congress intended to

exempt. Selling treats at Disneyland is a far cry from renting hotel rooms at the Disney hotel.

Riding a roller-coaster is different than buying dinner and renting a room. One is recreational,

and the other is a necessity of life." Cao, 375 F.3d at 397. This Court finds that Adelaide Shores

is not a recreational establishment, and that the activities that take place on the premises are

incidental to Defendants' main business—the renting of lots for RVs. The activities are provided

to entertain residents and to help distinguish Adelaide Shores from other RV parks in the area

that might attract customers from northern states. Defendants cannot avoid this conclusion by

---

[10] Defendants do not dispute this notion, but claim it is inapplicable because it was not instituted until Fall 2011. Defs. Resp., at 7. However, this Court finds this factor to be instructive on how Defendants actually view their establishment. The Residential Lease memorializes the requirements that residents need to abide by in how they use and maintain their property. Pl. Reply, at 5. This is typically not something one visiting an amusement and recreational establishment needs to sign.

[11] Also, there is no evidence that Adelaide Shores is open to the public which, although not determinative, further supports this Court's analysis. Defendants only claim that tickets can be purchased by the public for certain events if residents fail to purchase all of the tickets. See Dep. of C. Falk-Lare, at 161–62 (ECF No. 57-2).

generally alleging that Adelaide Shores "sells a recreational lifestyle to seasonal residents." Defs. Resp., at 6.  Thus, this Court determines that Adelaide Shores offers recreational activities not because selling recreational activities is its primary end but rather to further promote its business of renting RV lots.  "[T]he recreational activities are just a carrot enticing people to make the trip" to Adelaide Shores.  Cao, 375 F.3d at 398.  Therefore, this Court determines that Defendants do not qualify for the amusement and recreational establishment exemption from the FLSA contained in section 213(a)(3) and grants summary judgment in favor of Plaintiff on this issue.[12]

### B. Retaliation

In Count I of the Complaint, Plaintiff claims that Defendants retaliated against him in violation of 29 U.S.C. § 215(a)(3) because he complained about Defendants' unlawful payment practices under the FLSA.  Under the FLSA, it is "unlawful for any person . . . to discharge . . . [an] employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  The Eleventh Circuit has utilized the burden-shifting framework under Title VII of the Civil Rights Act to analyze retaliation claims under the FLSA which are to be proven by circumstantial evidence.  See e.g., Wolf v. Coca–Cola Co., 200 F.3d 1337, 1342–43 (11th Cir. 2000).[13]  In order to show a protected activity, a plaintiff must first "show that he subjectively, that is in good faith, believed

---

[12] Since Defendants cannot establish that Adelaide Shores is an amusement or recreational establishment, this Court declines to address whether Adelaide Shores is seasonal in nature.

[13] Under this framework, "the plaintiff must first establish a *prima facie* case of retaliation.  The employer then must articulate a legitimate nonretaliatory reason for the adverse employment action. If the employer meets this burden of production, then the plaintiff must establish that the proffered reason is pretextual."  Raspanti v. Four Amigoes Travel, Inc., 266 Fed. App'x 820, 822 (11th Cir. 2008) (internal citations omitted).  "A claimant establishes a *prima facie* case under Section 215(a)(3) by establishing three elements: '(1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'"  Id. (quoting Wolf, 200 F.3d at 1342–43).

that his employer was violating the law." Perez v. Brands Service Corp., No. 10-CV-61203, 2011 WL 3236022, at *10 (S.D. Fla. July 28, 2011) (citing Little v. United Techs. Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)).   Second, the plaintiff must have an "objectively reasonable belief that his employer was engaged in unlawful practices." Id. (citing Padilla v. The North Broward Hosp. Dist., 270 Fed. App'x 966 (11th Cir. 2008)).

Defendants seek summary judgment on this claim contending that Plaintiff did not have an objectively reasonable and good faith belief that Defendants' employment practice was unlawful. Defs. Mot. for Summ. J., at 12–14. Defendants' sole argument is that Plaintiff did not complain until August 2011 about the illegal pay practice even though Plaintiff was compensated in this manner for approximately seven years. Defs. Mot. for Summ. J., at 13–14. Defendants argue that Plaintiff lacked a good faith and an objectively reasonable belief concerning Defendants' practices because it is not reasonable for an employee to fail to complain for approximately seven years. Defs. Mot. for Summ. J., at 13–14.

Here, Defendants' arguments concerning Plaintiff's lack of good faith and objectively reasonable belief are without merit. Plaintiff explained the delay by stating that he did not know about the illegal practices until after discussing his employment with an attorney. Pl. Resp., at 13–14. Plaintiff then complained about the practices shortly after learning of their illegality in December 2010 and then again shortly before his termination.[14] Defendants fail to explain their argument that Plaintiff's failure to learn of the illegality of Defendants' practices earlier would render his complaints in bad faith. See Johnson v. Advertiser Co., 778 F. Supp. 2d. 1270, 1278 (M.D. Ala. 2011). Moreover, the fact that Plaintiff complained multiple times about the payment

---

[14] This Court rejects Defendants' attempts to discredit Plaintiff by arguing that Plaintiff's Response contradicts his Complaint. Defs. Reply, at 10. Nowhere in Plaintiff's Complaint does Plaintiff allege that the first or only time he complained was in August 2011. See Compl., ¶¶ 24, 34. At a minimum, this results in a disputed material fact concerning when Plaintiff first complained about the alleged illegal payment practice.

practice tends to prove that he honestly believed that he was not being properly compensated. Additionally, Plaintiff has established the objective component since Defendants, as discussed *supra*, do not qualify for exemption from the FLSA. Therefore, this Court declines to grant summary judgment in Defendants' favor as to Count I of Plaintiff's Complaint.

C. Unjust Enrichment

In Count III of the Complaint, Plaintiff asserts a claim of unjust enrichment because Defendants avoided paying taxes by wrongfully classifying Plaintiff as an independent contractor. As redress, Plaintiff seeks the money that he improperly paid as taxes that should have been paid by Defendants. Pl. Resp., at 15. Defendants claim summary judgment should be granted in their favor because Plaintiff's claim is preempted by the Federal Insurance Contributions Act (the "FICA"), 26 U.S.C. § 3101, *et seq.*, or, in the alternative, the FLSA. Defs. Mot. for Summ. J., at 15; Defs. Reply, at 8–9.[15]

Plaintiff alleges that Defendants improperly classified him as an independent contractor in order to avoid paying taxes on his wages. Pl. Resp., at 16; Pl. Sur-Reply, at 5–6. Although Plaintiff pled a claim of unjust enrichment, Pl. Resp., at 15, this Court finds that such claims are prempted by the FICA. Indeed, the courts that have addressed such claims "have overwhelmingly come down on the side of preemption, regardless of whether the claims at issue are asserted directly under FICA or are framed as state-law claims to recover moneys owed directly to the plaintiffs by the defendant-employers as a result of their failure to pay their share of FICA taxes." Crouch v. Guardian Angel Nursing, Inc., No. 07-CV-00541, 2009 WL 3738095, at *5 (M.D. Tenn. Nov. 4, 2009) (dismissing unjust enrichment and conversion claims

---

[15] Neither party disputes that there is no private right of action under the FICA. See McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718, 725 (11th Cir. 2002) (stating that it is "abundantly clear that no private cause of action may be implied from the language, structure, or legislative history of FICA"); Powell v. Carey Int'l, Inc., 514 F. Supp. 2d 1302, 1323–24 (S.D. Fla. 2007).

because "the appropriate avenue of redress for overpayment or erroneous payment of taxes is to appeal directly to the IRS as the party who received the overpayment."). Additionally, "the existence of federal administrative remedies for the alleged misclassification as independent contractor, established by Congress, also suggests that Congress intended the administrative remedies to preempt state-law claims." Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 65 (3d Cir. 2008) (finding that claims of unjust enrichment and breach of contract for an employer's misclassification of an employee as an independent contractor were preempted by IRS regulations). Thus, this Court grants summary judgment in favor of Defendants on Plaintiff's unjust enrichment claim because it is preempted by the FICA.[16]

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (ECF No. 22) is GRANTED IN PART AND DENIED IN PART. Count III of Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that Plaintiff John Mann's Motion for Partial Summary Judgment (ECF No. 55) is GRANTED. This Court finds that Defendants do not qualify for exemption from the FLSA under section 213(a)(3) for amusement and recreational establishments. Additionally, this Court finds that Michael Falk and Debra Falk d/b/a Adelaide Shores and Michael Falk, individually, are employers under the FLSA. This Court also determines that Plaintiff qualifies as an employee under the FLSA during his employment with Defendants. Lastly, this Court finds that Defendants failed to take affirmative steps in good faith to determine their obligations under the FLSA. This action will proceed on all remaining issues.

---

[16] In determining that Plaintiff's claim for unjust enrichment is preempted by the FICA, this Court declines to address Defendants' argument that Plaintiff's claim is preempted by the FLSA. Defs. Reply, 8–9.

DONE AND ORDERED in Chambers at Miami, Florida, this 5th day of October, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record